We're happy to hear argument in United States versus Ello. Please sit, please be seated. Well, we're glad to have you with us. Good afternoon, Your Honor. I'm Stephen Spurgeon from the state of Texas on behalf of Sergio Carrillo Murillo, the appellant in this case. And first, I want to apologize to this panel, your staff, the opposing counsel for my terrible mistake with calendaring. I am sorry, and I don't know what else to say. I'm sorry. Well, and I want to thank you for the opportunity to be here today. So thank you very much. May it please the court, counsel. The district court granted a certificate of appeal ability, quote, with respect to the application of Lee to the facts of this case, including whether the defendant's plea agreement has the depositive effect the court attributed to it. That's why we're here today. Lee, which was issued by the Supreme Court last year, held that a defendant adequately, adequately proved by, adequately proved by preponderance of the evidence, a reasonable probability that but for his counsel's erroneous advice, he would have rejected a guilty plea where the plea colloquy and the surrounding circumstances showed deportation was the determinative issue in his decision to accept the plea. And it was not irrational. This is probably the language that was new in Lee. It was not irrational to reject the plea where there was some chance of avoiding deportation, however remote. Here, in this particular case, defense counsel's immigration advice was memorialized at the plea colloquy. It was done when the judge inquired of defense counsel, this is page 15 of the joint appendix at the bottom of the page. The judge says, okay, I take it he's a citizen, is that correct? Here, the judge presumed Mr. Carrillo-Murillo was a citizen. And defense counsel said, no, your honor, that is not correct. The court said, okay. Defense counsel said he is a permanent resident of the United States for some time. The court inquired possibility of deportation. Defense counsel said possibility. The court said, okay, very well. That immigration, that advice to the court and what was said in court about possibility is wrong. And it's very similar to this court's decision, and I think it's called Swabby, I think I'm pronouncing that correctly, the Swabby case where the defendant pleaded guilty to certain deportation consequences. Here, these are absolutely 100% certain deportation consequences. Congress has defined drug trafficking as an aggravated felony under the definitions of aggravated felonies at section 1001A43B of Title VIII, codified in the- But the defendant knew that deportation was a possibility. It was in his plea agreement that he signed. He knew it was a possibility. And in fact- He said it didn't make any difference to him. Well, your honor, sort of. Sort of? Hang on. Let's look at page 11. We're going to go to page 11. That's paragraph 19. That's what the judge focused on. What the judge focused on? What do you mean what the judge focused on? Paragraph 19 of the immigration, of the plea agreement. I'm not sure the judge ever mentioned paragraph 19. Well, the judge mentioned, the judge mentioned in his opinion, he talked about that quotation about- Oh, you're talking about Judge Tringa. Yes, your honor. I thought you were back on the plea. No. Judge Tringa dealt with paragraph 19. He relied on paragraph 19. But I don't think that Judge Kacharis mentioned paragraph 19 specifically. No, he did not, Judge. No, he didn't. But paragraph 19 is what your problem is. Well, it would be, except- What your client's problem is. Well, let me be clear about that. This case involves a claim of ineffective assistance of counsel extending to the advice that specifically undermined that paragraph 19. Throughout- Well, the counsel for the defendant signed the plea agreement. Well, sure. Well, she signed. The counsel signed paragraph 19. She approved paragraph 19. She did. And the defendant approved paragraph 19. That's correct. They both signed it. The United States attorney approved paragraph 19. Correct. That same paragraph was in the Swabie case as well. No, it wasn't. What I read this morning said- Well, maybe that's the way you read it. You may have . . . Then maybe others could read it that way too, but I'm not so sure it's the same. But the court didn't . . . The plea agreement and the plea colloquy, you're talking about Swabie. What about that LeMaster case? Do you agree with that one? No, sir. I'm not familiar with LeMaster. I didn't read that one. But what I would tell . . . In that Lee case, the chief justice says that the most important thing is what happens contemporaneously. Do you agree with that? I do. It is the . . . In the courtroom at the plea proceeding. The plea colloquy? The plea colloquy and the plea agreement. Well, he didn't say the plea agreement. He said the plea colloquy and the surrounding circumstances. Now, perhaps the plea . . . He said the contemporaneous. The plea agreement was adopted and signed by the defendant and signed by the lawyer and signed by the United States attorney and filed with the court as part of the plea colloquy. Normal process. And your client said, I've read it. It's been read to me. I understand it. Right? Correct, Your Honor. Under oath. Absolutely. He swore under oath that he understood and read the plea agreement. And that is a factor. And he spoke English. He does. He'd been living here for 20 years. It's a factor. We don't contest that those words are in there. What we do contest . . . But what he understood . . . And he understood them. What he understood was that it was a possibility that he'd be deported, not that he was for sure going to be deported if he signed this document. Doesn't that make a difference in the case? Exactly. Because . . . Where does he say that? Well, it says that in the . . . His lawyer says that. His lawyer says. She negotiated . . . And that's what the document says. The plea agreement says he affirms the defendant wants to plea guilty regardless of the immigration consequences that the plea may entail, even if the . . . Even if. There's a comma after entail. Even if the consequence is the defendant's automatic removal from the United States. It exists. Before the comma, it says may entail. That sentence is obviously there. I mean, that was . . . This would be a pretty easy case absent that. That's the whole issue, Your Honor. That's why it makes this tough. That sentence is what makes this a tough case. It's because what you just said is what it says. If it is tough, that sentence is what makes it tough for your client. Absolutely. That's the whole controversy. And that's part of the . . . It's what the Chief Justice said, the contemporaneous proceedings. It is part of it. But it's not all of it. Part and parcel of it. It's not all of it. You have post . . . Well, we have . . . You have post-sentencing affidavits and declarations and things like that, which are . . . Well, we have . . . And your client repudiates . . . We have . . . Part of the plea agreement. We have the plea agreement that's submitted that they negotiated on. That's what's important here. Defense counsel negotiated . . . You do have some earlier things, but there's only one plea agreement. Only one plea agreement. There's only a plea . . . That's the one that I'm just reading from. The one that was filed at the plea hearing is the only plea agreement. That is . . . There were plea negotiations leading up to it. Which removed the language in the plea agreement that said my client couldn't attempt to use any potential immigration relief to stay in the United States.  He wasn't eligible for any of that, but . . . Was your client ever told by the court during the plea that it was a certainty that he would be deported? No. He was told the opposite, wasn't he? That the court said you also may be deported as a result of this plea. Do you understand that? And the defendant answered yes. And I'm not sure, Your Honors, that it's the judge's duty anyway. Shouldn't it be, as the Fifth Circuit said in the Marufo case, and it's in my brief, shouldn't it be that that's the lawyer's duty? Isn't it the lawyer's duty to give immigration advice? It is the lawyer's duty. Just for the record . . . A lot of things should be, but we've got to go by what the precedent is here. And just for the record, the lawyer at the plea hearing also said, the court asked the lawyer, it's a possibility of deportation then? And the lawyer said possibility. I don't think this is a card case to find deficiency. The issue is going to be one of prejudice. And that's what I believe. And even Judge Trenga, he didn't make a finding one way or the other. He assumed. He assumed there was ineffectiveness. He didn't say that there was ineffective counsel. He assumed it and went directly to the prejudice problem. Exactly. Yeah. Exactly. And so the issue is where this prejudice is established. And my point is, is that part of the contemporaneous evidence, Your Honor, is it includes, okay, the negotiations that did take place between defense lawyers and defense counsel and the U.S. Attorney's Office redrafting the plea agreement to give this false hope to my client that he could pursue these various kinds of relief. And there were negotiations and there were drafts back and forth, but there's only one plea agreement. That's correct. All right. But it doesn't change . . . There only is one plea agreement. But it still . . . There were negotiations leading to it and there were drafts back and forth and negotiations, but then there's only one agreement. And that's all there is. One agreement, but the other stuff, it's not an agreement, the other stuff goes to his desire. It is corroborative of all . . . It's in the record. Pardon me? Sure. It's all in the record. It's in the record. And you're entitled to argue about it all you want. But the contemporaneous events, as the Chief Justice says, what's the most important thing? Contemporaneous. That's correct, Your Honor. So we've got the plea colloquy, okay? And we've got that one sentence. We've got that one sentence in paragraph 19. And even that paragraph's factually and legally incorrect, Your Honor. I mean, the first sentence may have consequences. These aren't may. Which part? The first sentence of paragraph 19, where the judge says it may have consequences. Not have may. It will have consequences. 100% guaranteed. It's factually wrong. It's legally wrong. It may have consequences. It will have consequences. So what do you . . . That's the plea agreement. That's the plea agreement. Paragraph 19 says . . . And it says what it says. It says what it says. It says what it says. And he says in the last sentence, Even if . . . I'm pleading guilty even if I'm leaving the country. Even if. That's in the last clause. But does that outweigh the other? I guess that's the issue. Does that one sentence outweigh all the other evidence? I mean, judge . . . That's not even the full sentence. Judge, my client . . . Even if the consequence is the automatic removal. He insisted on pleading guilty. He got a sweetheart deal. Let's talk about the deal. He got a sweetheart deal. Hang on. He ran that cocaine from Long Beach, California to Chantilly, Virginia. And it was cut . . . Dead to rights by the government. And he got a sweetheart deal. Well, judge, you don't know what the deal is until the sentence. That's not contemporaneous. He got a sweetheart deal on the plea. It was not contemporaneous. On the plea, he got a sweetheart deal. He didn't know who he was going to get sentenced to until he got sentenced. I mean, he didn't know what was going to happen there. That's not contemporaneous. And while a good deal to a guy that serves these 24 months and goes home to his family, that may not be a good deal that gets banished from his family for the rest of his life. And that's what the Supreme Court talks about in the St. Cyr case. That sometimes it's more important to stay with your family than it is the length of a sentence. And that's the law for that. And this court cited it in the Swabie case, that very language. So I get what the court is saying. But here we have a situation . . . I don't know what the court is saying. I'm just asking you questions. That's all I'm . . . I understand the argument. But that one provision shouldn't override everything else in the case. The record is clear that my client hired this lawyer because she held herself out as an immigration specialist. She has a radio show that she does with immigration issues. It's clear that she didn't give him correct advice but tried to pawn it off to another lawyer. And the lawyer swears he never talked to my client. Okay? So he didn't get proper advice. So it's against that framework. When the plea agreement says this one sentence, everything else is supposed to fall aside? When his defense lawyer actively, actively communicated to him, take the deal, you get a chance to stay. She even says that. She says, I told him that. So is that the . . . Let's take this one more step. I believe that . . . I think that if we need to be checking, that this court could probably take judicial notice that post-Padilla v. Kentucky, that paragraph is in every plea agreement that most U.S. Attorney's offices use in the United States of America. All right? Which paragraph? Paragraph 19. All right? It's in all of them because that's supposed to be the catch-all. By putting that paragraph in here, does that excuse the ineffective assistance of counsel and the false assurances to be able to stay in the United States after pleading? I read it this morning. So was it in the SWABI plea agreement? It's in SWABI. The exact same language? The language about no matter what. And they had some negotiations on SWABI, too, about trying to remove stuff. But I read it this morning. Do you remember what clause is in SWABI? It's pretty close to those words. Well, maybe the government has SWABI handy. I didn't bring my computer in. I pulled it in this morning. Pretty identical. I was surprised. I wish I had quoted it in my brief. I didn't even cite SWABI. I wish I had. You probably didn't cite it because the United States didn't cite it either. Where was I? I got 30 seconds. The government hasn't cited any authority, Your Honors, that boilerplate language in a plea agreement should be the controlling factor on a defendant's decision-making as a contemporaneous circumstance as to whether if he had been given accurate immigration advice he would have accepted the plea or taken the case to trial. There's no case law on that. And to try to make that extension, it shouldn't be the public policy of the United States. It shouldn't be that a single sentence in a boilerplate plea agreement cancels out all of the other contemporaneous evidence. The counsel negotiated out of the final version of the plea agreement various waivers and various forms of relief. She negotiated out what's called voluntary departure. Well, aggravated felons aren't eligible for voluntary departure. She negotiated out asylum. Well, aggravated felons aren't eligible for asylum, particularly if they wait more than a year to file their claim. She negotiated out withholding. Withholding is not available to my client because it's a particular serious crime. She wrote out cancellation of removal. Well, he's not eligible for cancellation of removal because you can't be convicted of an aggravated felony. She wrote out suspension of deportation from the plea agreement. Well, the suspension of deportation was abolished under Ira Ira in 1997. She took out the words about how he couldn't adjust his status. Well, adjustment of status, he isn't eligible because he has a drug conviction. My point is that these things defense counsel did that are in the record prior to the time he pleaded guilty all show that his decision to plead guilty, the determinative factor wasn't the chance to get less time, although that's a good thing, all right? The determinative factor was he had a chance to stay in the United States after he served his time. I think your time is expiring. Oh, I certainly am. I went past. I apologize. So for some reason I don't have SWABI in front of me, but I have read it a couple of times. When was it decided? When was it issued? SWABI was decided in 2017, Your Honor. And the language I think you're looking for says that conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Defendant understands that no one, including his attorney or the court, can predict with certainty the effects of a conviction on immigration status. Defendant, nevertheless, affirms that he wants to plead guilty regardless of any potential immigration consequences. Not identical, but pretty close. But where I really was, did the government cite SWABI in its brief? It seems to me SWABI is pretty close, whichever way we come out here. So it was just odd to me. I would have thought maybe it was decided earlier this year, and that's why the government didn't cite it, because you're usually pretty straight with us. They cited SWABI. Did they cite it? Yeah. The key, what I think is the crux of this case, is that this defendant cannot claim that he was the type of defendant who would seek to avoid removal at all costs. That's the type of defendant that Lee addressed. This is a case where the defendant is facing overwhelming evidence of guilt. He's getting significant benefits from the plea agreement. And for him to claim that it would be rational to go to trial, he has to say, I'm the sort of person who, despite overpowering evidence of guilt, significant benefits in the plea agreement, I'm going to go to trial anyway, because immigration consequences matter to me that much. So your argument rests on the prejudice. I think it does. And the key point that Lee is, Lee is addressing a defendant who says that I would accept these consequences because immigration matters to me that much. And yet this defendant, at his plea colloquy, said when asked, the district judge personally addressed him and said, you may be deported as a result of this plea. And he says, yes. And then he signs a plea agreement that says that automatic removal could be a consequence. And he is pleading guilty even if that is true. And so for a defendant to say, I agree that automatic removal could be a consequence here, and I am nevertheless pleading guilty. And yes, I understand I may be deported. That defendant cannot come back in a 2255, file a declaration that, by the way, doesn't even discuss, mention, or in any way acknowledge his plea colloquy and what his plea agreement says, and then say, well, I'm the sort of person who, despite all this evidence against me, and despite the significant benefits, and there are significant benefits that he got from the plea, I would have gone to trial. But the plea colloquy actually, they repeatedly said possibility. I know what the paragraph 19 says after it says may. But during the conversation with the defendant and the court at that point to make sure that this was a knowing plea, they said possibility three times. Right. Two points about that. The first is that this is not as in Swabie where the government was saying, look, this plea colloquy corrects any misadvice. So there, if the idea was, well, the attorney told you that you might be deported, you're in fact facing mandatory removal, does the plea colloquy fix that? No. Here, so that was the main issue in Swabie. Here, the issue is this defendant is saying, against a backdrop that's not present in Swabie or Arkansas, of overpowering evidence of guilt and significant benefits to the plea, that I am the sort of person who would push those aside and go to trial for this chance of avoiding removal because immigration consequences matter to me that much. Here, this defendant, what makes the plea colloquy and the plea agreement so damaging to this defendant... He might as well roll the dice. I mean, if he knew he was going to be deported for sure with the plea agreement, he might as well take a chance at trial. I don't think so, because this defendant can't say, I'm the sort of person who doesn't care about my sentence. All I care about is the immigration consequences. That's the type of defendant that the Supreme Court is considering in Lee, is the guy who says, you know what? Even if you double my sentence, I want to stay in the United States so much that I'll take the small chance that I might be acquitted at trial. His affidavit and his fiancée's affidavit and his mother's affidavit and her mother's affidavit that says it was, in fact, that important to him. Well, he doesn't say that. He says, Ms. Martell did not tell me that I would be deported for pleading guilty, and that's at Appendix H65. He never goes back and says, well, you know, I know I said in my plea agreement that I would plead guilty even if I were facing automatic removal, but I take that back. And as Judge King pointed out under this Court's opinion in Will Master, this Court has said, in the absence of extraordinary circumstances, the sworn truth of statements made during a Rule 11 colloquy is conclusively established, and the district court should, without holding an evidentiary hearing, dismiss any 2255 motion that necessarily relies on allegations that contradict the sworn statements. And then in Lee... We've never changed that. You have not. That's the law of this circuit. That is the law of this circuit, and in Lee, the Supreme Court specifically said that post hoc certians are insufficient, and in footnote... I'm sorry. In footnote 4, Lee endorsed or spoke approvingly of cases that say that when you're analyzing prejudice, a defendant cannot turn his back on his statements that he made in his plea colloquy. And what makes this case, I think, different from both Occonsod and Suabe is the defendant is trying to say that he is the person who would go to trial regardless, which can't be reconciled with what he said at the plea. And there really is not a conceivable defense to the charges here. This defendant was caught red-handed with a kilogram of cocaine. The transaction was recorded. He wasn't caught with it. He went to California in a pickup truck or a truck and got it and drove it across country. That's correct, Your Honor. He drove it from Long Beach, California to Virginia in less than 48 hours. He traveled... And sold it for $40,000 in a Walmart parking lot. That's right. And there were recordings of the transaction and there was a confidential informant. There were text messages that implicated him. He was facing a load of prison time. That's right. Almost a life sentence. And then he got a benefit from the plea agreement that he avoided a five-year mandatory minimum. He got a dismissal of account. He got an agreement where the government took out the language that he was waiving right to discretionary relief such as the Convention Against Torture which conceivably if he could make it out factually would be something he could seek relief under. But the key point is under Lee the Supreme Court has said, look, there may be some defendants for whom immigration consequences are so important that they will take these super long-shot chances. But when you come into court and you say, I am pleading guilty, even if that would result in automatic removal you just can't be that person. Okay. Let me just back up a second. If we had the same plea agreement that they had in I'll include this even if prayer. Right. Would the government's submission be the same? I would maintain that the government would win in that kind of case. It wouldn't be quite as strong. What would be the basis for that submission? Because there wouldn't have been this statement by him Right. And we know the other things where he is misled or whatever by the district court. And I think you give his statement before the habeas court a little short shrift I mean, he says, if I had known that by pleading guilty I would be deported from this country, I would have asked for a jury trial and tried to win my case even if the chance of winning might be small and I might get more prison time. At least I would have had a chance, even if small. I would have also asked Ms. Martell to try to get a different plea agreement and would not get deported. At least she could try. I've never been in trouble like this before. But he says in this statement that he would have gone to trial. This goes to the argument I thought you were the substantial part of your argument. Right. But this defendant can't make this argument. That assertion is directly contradicted by his plea agreement. I understand that. That's why I said if we took out the even if paragraph clause in the plea agreement would the government still be making in light of Swabie in light of the Supreme Court case and in light of this declaration and also the statements that he, supporting statements he had from his relatives about how much he wanted to stay in the United States. Right. I mean you might not agree with Swabie but it's the law of the circuit. Well I think that, well I agree it is the law of the circuit but I think that the That's unless it's contrary to McMaster. That's true and I think that what Judge Moskowitz said is contrary to LeMaster. But I just want everybody to understand that I'm taking out of the picture the even if. That was my hypothetical. That that's not in. And you think even, and then you're saying this plea agreement even without the even if clause would be contrary to McMaster. Well so, not as to McMaster, or LeMaster I'm sorry. So the if we didn't have that clause arguably you could say well there should have been an evidentiary hearing on this point. But in this case because the defendant made under oath the statement yeah I know I could be deported and he says in this joint appendix page 24 and 25 that I reviewed and understood my plea agreement that the defendant can't then come in and under LeMaster and say I know I said all those things under oath but now here's my declaration that repudiates those. I mean the point of the plea colloquy is to prevent that kind of about face without any further supporting evidence. I mean what it promotes is to say otherwise is to have a defendant like this defendant get a short sentence, complete a sentence have no significant risk from blowing up the plea and being like well I want the benefit now to avoid you know immigration consequences I'll collaterally attack the. Well in LeMaster we said that allegations in a 2255 motion that directly contradict the petitioner sworn statement made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false. I agree with that and that's what it said. Yes. Maybe unless Schwab is it an intention with that or can they be reconciled? I think ultimately they can be reconciled but to the extent there is a conflict though I think that Lee, the Supreme Court statement in Lee, courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's back to what LeMaster said. Lee was post Schwab. Yes. That's written by the chief. Right. Okay but I would like to just focus on is it McMaster? LeMaster. LeMaster. Sorry. And I just want to be sure I understand what the government's position is. If we take out the even if clause is it the government's position that what was said in this plea agreement without the even if clause that and with all the other evidence in the case would require would McMaster would require us to honor the plea agreement and the defendant would lose. I just don't see that because it doesn't seem to me that it's directly the language you read me from McMaster doesn't seem to me to cover that situation. Now we can then go on and talk about the even if clause. Right. Well so maybe I think it helps to put it more put it in concrete terms. The defendant is saying I know I'm facing really strong evidence and I know this plea deal is going to give me a lot of benefits but nevertheless immigration matters to me so much I want to go to trial and let's suppose all the defendant said is I'm pleading guilty even though I may be deported as a result of the plea. That would be pretty hard on its face to say you know really you're the sort of person who would. But that's what Swabie is. Well but Swabie is a defendant who did not the court said look the defendant in Swabie the court said had some reasonable arguments if he went to trial. Swabie was not a case where and remember I think all these things have to be taken in conjunction. I think that all goes to prejudice. It does but that's what we're talking about principally That's all Judge Tringa dealt with Judge Tringa decided this on prejudice That's right. He assumed That's correct. He assumed for the purposes of his decision that the first prong ineffective counsel was satisfied and he dealt with prejudice That's correct That's correct And the government saying are you willing to assume or are you saying neither of them are satisfied Well I think that the case would be on the performance prong the case would be easier with further factual findings that haven't happened because there hasn't been an evidentiary hearing. I don't want to throw this defense lawyer under the bus here There's a bunch of disputes about so she says that you know the defendant went and consulted with her associate Reyes. Reyes says didn't the family says after the sentencing that she told them that the defendant would not be removed and she says that she did these kinds of facts ironing that out would make the performance prong easier to analyze but I think that Judge Tringa cut to the chase here and under the prejudice prong the defendant's assertions in the plea agreement and at the plea colloquy make it impossible for him to say that he is the type of defendant who cares about immigration consequences so much that he would double his sentence have an additional count and not have had that opportunity to make some limited arguments to the immigration court because those were the benefits he got out of this plea deal Well he got a good break he got Judge Gutierrez too because he had a downward departure for him. He did and he had an opportunity to argue for a sentence he asked for 12 months and he got 24 and the mandatory minimum would have been 60 5 years would have been charges he had a mandatory minimum of 5 years. Exactly and I mean these the language in this plea agreement may not solve every problem but and in 2255 but in a case where the evidence is overpowering against the defendant he's getting significant benefits. The language you know needs to have some work to do and it does here because the only way out for this defendant despite that background and claim that going to trial would have been rational and Lee didn't disturb Padilla's statement that going to trial has to have been rational if that language doesn't address the point of the defendant who comes in and claims well actually I care so much about my immigration consequences that I would run headlong into much worse outcome at trial for me that language has to be able to cabin that kind of a claim. Probably the argument that you're making is that have you tracked the post Lee cases that have come down in the circuits? I don't think there's a ton of surprisingly post Lee litigation. I've looked at some of them. I haven't found one that has rejected a Lee claim. Well but you know I would emphasize to the court that there is here the combination of things that you don't always see or frequently do not see which is the significant benefits the overwhelming weight of the evidence against the defendant and him saying it's still rational for me to go to trial and I've said that I would plead guilty even if it leads to automatic removal. That's just a pretty peculiar set of circumstances for a defendant to be making that kind of claim. It takes a defendant who you know I assume he's figuring well I'm not going to actually have to do that extra time. He was only 28 years old at the time of the plea. I mean I could understand your argument a little more if he was much older and facing a significant amount of time but at the age of 28 and he says it was that important to him I don't think you can say it's just not rational to think that he would rather take a chance than be deported. That's old enough to get through a plea colloquy and be taken at your word at the plea colloquy. Well the district court and his lawyer couldn't get through the plea colloquy with accurate information for this defendant. I don't think there is a claim here that there was any error at the plea colloquy and the plea colloquy had him When the court and his lawyer at the plea colloquy said that it was a possibility that he would be deported, that wasn't accurate? That was For sure he would be deported. It didn't exhaust the universe and as far as like a Convention Against Torture claim. I don't understand that. I'm sorry. What does that mean it didn't exhaust the universe? Well so he could raise a claim for Convention Against Torture and an immigration proceeding and defeat a remover but the point is that the judge and the lawyer have set forth the range of that there is this possibility out there and you could compare it to a prediction about sentencing. You know we're not going to blow up pleas Let's compare it to a prediction about mandatory minimum sentencing. If somebody in a plea colloquy was told even though they were facing a mandatory minimum of 5 years they were told during the colloquy oh it's a possibility you might get 5 years. Yes It's not a possibility it's mandatory. Right but I think in that hypothetical a defendant who faced overwhelming evidence of conviction received otherwise significant benefits from the plea in this case and says I would have gone to trial the court wouldn't accept that as a rational decision. The fact that there was that when he agreed well I may face the mandatory minimum but I'm still going to plead guilty and then to have him come into court and say well but I would have gone to trial because if you had told me I definitely would get the mandatory minimum I'm the person who I guess it doesn't even completely The argument that the Supreme Court rejected in Lee is your prejudice argument It is not your honor Lee had no bona fide defense not even a weak one so he stood to gain nothing from going to trial but more prison time and no rational defendant charged with a deportable offense and facing overwhelming evidence of guilt would proceed to trial rather than to take a plea deal with a shorter prison sentence but the key I think there your honor is that in Lee the Supreme Court noted that the plea colloquy in fact supported the defendant's claim because when he was going through the plea colloquy he expressed his interest in avoiding immigration consequences there was nothing like this language of I'm going to plead guilty even if it leads to my automatic removal and then there's footnote four in Lee that expressly endorses the precedent that says that you may be bound by what you say at the plea colloquy and that is in turn consistent with this court's opinion in the long line of authority that is reflected in Lemaster so Lee just isn't a case that dealt with this kind of assertion at a plea colloquy that the defendant cannot turn his back on several courts have noted that a judge's warnings at a plea colloquy may undermine a claim that the defendant was prejudiced. That is true but in addition Lee notes that the plea colloquy in fact supported if you look at page well footnote four is part of it but it's consistent with page 1968 of Lee the Supreme Court said Lee demonstrated as much at his plea colloquy when the conviction could result in you being deported and asked does that affect your decision about whether you want to plead guilty or not Lee answered yes your honor and then when the judge inquired how does it affect your decision Lee responded I don't understand and then turned to his counsel who gave him incorrect advice so that is quite different from this case Lee did not contemplate that in this case a scenario like this case the Supreme Court also described the defendant in Lee as presenting unusual circumstances it was not a blanket rule that you could turn your back on a what you said in the plea colloquy in the plea agreement I see my red light is on and I don't want to wear out my welcome thank you do I have a few seconds? yes quickly three things you have three minutes ah thank you the court judge Moss you were absolutely correct Lee's case was weak and if you go through the complete sentencing when the sentencing took place that the court has my Sergio Carrillo Murillo's case he might have lost but it wasn't it wasn't a gimme it wasn't his car it wasn't any records in the cell phone I'm talking to Judge King we've all tried cases you're saying he didn't own the truck I'm saying that it came out at the sentencing that he didn't know it was a drug deal until midway across the country midway across the country he went out there first he took the truck out there co-defendant still in prison and my point is judge we've all tried cases they got the tapes and everything but not with him on it my point is there's evidence here that he could have presented well who knows you put a few millennials on a jury you find out what you get he got a sweetheart deal you have to deal with that good looking family no prior criminal history he can testify who knows what a jury will do but if you knew he was going to be deported for sure why not roll the dice for a chance to stay with your family if it's your number one priority which is why you hire the lawyer that says she's an immigration lawyer which is why she worked so hard to remove that immigration language from the plea agreement because that was the determining factor and there's no doubt about that there's nothing in the record that says I took the deal because I was getting last time nothing about that number two I got to go back to this plea agreement paragraph 19 we cannot read paragraph 19 in a vacuum it has to be read in terms of what was overall said of the plea colloquy which is there's only a chance that you're going to be deported and this one sentence really bothers me the defendant understands that no one including the defendant's attorney or the district court can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status that is 100% nonsense and I don't know why the district attorney nonsense it's nonsense you can absolutely 100% guarantee that you are convicted of a drug trafficking crime and you are not a citizen of the United States you will be deported now when counsel talks about the there is some remote thing out there that if you can show that they're going to whack you in Mexico by the government if you go back then but that's not relevant here he came here when he was 7 years old he's a kid when he comes here okay his roots are here the only thing that's not American about my client is where he was born because he acts like an American he does dumb things like an American and he's his family is an American he's an American except he was born in Mexico and those are facts that are before the court also so my point is he is not he is not substantially different from Mr. Lee he had a weak case but he had a chance and he was deprived of that opportunity he's just deprived of the opportunity time's up thank you again so much we will ask the clerk to adjourn court and then we'll come down and greet the lawyers
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker